Filed 9/15/14  P. v. Flores CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039302 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1233116) |
| v. | |
| RUBEN VINCENT FLORES, | |
| Defendant and Appellant. | |

Defendant Ruben Vincent Flores was convicted by a jury of one count of possession of a controlled substance (methamphetamine) for sale (Health & Saf. Code, § 11378, count 1) and one count of transportation of a controlled substance (methamphetamine) for sale (*id*., § 11379, subd. (a), count 4).  The jury also found true a special allegation that Flores had previously been convicted of possession of a controlled substance for sale (*id*., §§ 11378, 11370.2, subd. (c)).  Before trial, Flores pleaded no contest to two misdemeanor charges:  (1) resisting an officer (Pen. Code, § 148, subd. (a)(1), count 2); and (2) providing a false name to an officer (*id*., § 148.9, count 3).  In a bifurcated proceeding, Flores admitted having a prior prison conviction (*id*., § 667.5, subd. (b)).

Flores was sentenced to a total term of seven years, consisting of the aggravated term of four years on count 4, consecutive to three years for his prior drug conviction (Health & Saf. Code, § 11370.2, subd. (c)).  The trial court imposed and then stayed, pursuant to Penal Code section 654, both a three year sentence on count 1 and a one year

sentence on the prison prior allegation. On the two misdemeanor charges, Flores was sentenced to concurrent six month terms.

On appeal, Flores raises several claims of evidentiary error, as follows: (1) the trial court erred in admitting evidence that Flores was homeless and unemployed at the time of his arrest; (2) the court erred in admitting evidence of his 2008 conviction for possession of methamphetamine for sale under Evidence Code section 1101; (3) the trial court erred in admitting statements he made in connection with his 2008 arrest to the effect that he was unemployed and his girlfriend was pregnant with his child; and (4) the trial court erred in admitting evidence he was a passenger in a stolen car when police stopped him, he fled from police and gave them false names when taken into custody.

We find no error in the trial court's rulings, but even if any of these evidentiary rulings were incorrect, Flores has failed to show he was prejudiced by them. Accordingly, we will affirm the judgment.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

   A.      *Prosecution case*

      1.      *Testimony relating to May 22, 2012 arrest*

On May 22, 2012, City of Mountain View Police Officer David Fisher[1] was working his assignment to the Regional Auto Theft Task Force conducting surveillance on a suspected stolen vehicle. Fisher, along with several other members of the task force, followed the subject vehicle for six to seven miles until it parked in a residential neighborhood. At that point, the officers boxed it in with their vehicles to prevent it being driven away. Fisher activated his emergency lights.

----

[1] Officer Fisher was qualified as an expert on the subjects of "[r]ecognition of methamphetamine, useable amount of methamphetamine and possession for sale of methamphetamine."

The passenger later identified as Flores, ran away with two other officers in pursuit. Officer Fisher detained the driver of the vehicle at gunpoint as he waited for additional officers and next saw Flores sitting on the curb after the other officers captured him and returned him to where the stolen vehicle was parked. One of the officers who had chased down Flores handed Fisher a plastic Ziploc bag containing a crystalline substance that was recovered during his pursuit. Based on his training and experience, Fisher believed the bag contained methamphetamine worth $400 to $700.[2]

Officer Fisher also believed that Flores intended to use "a little bit" of the methamphetamine himself, but would sell the rest. Fisher's opinion was based on the fact the quantity involved was much greater than would be needed for personal use and also because officers did not find any paraphernalia for using methamphetamine on Flores or in the stolen vehicle. Fisher said it was "common" for some methamphetamine users to purchase a large quantity of the drug, use a small amount themselves, then resell the bulk in order to support their habit. However, Fisher admitted that officers did not find any of the usual indicia of drug sales, such as scales, pay/owe sheets, packaging materials, etc., on Flores or in the stolen vehicle.

Officer Fisher spoke to Flores, who was carrying no identification, to ascertain his identity. Flores first told Fisher his name was Jesse Hernandez and gave him a birth date for that individual. A records check revealed that a person with that name and birth date existed, but had a tattoo which Fisher could not find on Flores. Fisher questioned Flores again about his identity. Flores admitted his name was not Hernandez, but then gave Fisher another false name and birth date. Even after a records check revealed this person had a distinctive scar on his chin--which Flores did not have--Flores maintained this as

---

[2] Subsequent laboratory analysis confirmed the Ziploc bag contained 7.38 grams, net weight, of methamphetamine.

his identity. His true identity was revealed only after his fingerprints were processed, at which time Fisher also learned Flores had outstanding warrants for his arrest.

At the preprocessing center, after being identified via his fingerprints, Flores told Officer Fisher he gave him false names[3] because he did not want to be arrested on the outstanding warrants. He also told Fisher the driver of the stolen vehicle handed him the methamphetamine and told him to run, so he did. Flores said he had used methamphetamine the day before, but he did not know that the vehicle he was in was stolen.

In filling out Flores' prebooking sheet, Officer Fisher asked for Flores' address and place of employment. Flores said he did not have an address because he was a transient, and was currently unemployed.[4]

Los Altos Police Sergeant Ryan Longone was also working his assignment to the Regional Automotive Theft Task Force on May 22. He assisted in boxing in the stolen vehicle and he and another officer chased after Flores when he tried to escape. After approximately 100 yards, Longone caught up to Flores and tackled him. Flores dropped something as he was being tackled.

Sergeant Longone kept telling Flores to stop resisting, but Flores did not comply, flailing his arms as Longone tried to handcuff him. Flores was tasered and then handcuffed.

---

[3] Flores said he gave Officer Fisher two of his cousins' names and birth dates, as he had previously given those names to police and had been allowed to leave.

[4] The trial court overruled defense counsel's objection to this line of questioning under Evidence Code section 352. In commenting on its ruling, outside the presence of the jury, the trial court indicated the evidence was "relevant to the circumstances as to the amount of methamphetamine, value of the methamphetamine and whether or not he did or did not have the means or not [*sic*] to pay for it or the motive to purchase it."

4

After Flores was taken into custody, Sergeant Longone retrieved the item Flores had dropped--a Ziploc bag containing crystalline shards. Longone walked Flores back to where the stolen vehicle was parked and handed the bag to Officer Fisher.

### 2. *Testimony relating to 2008 conviction*

Before receiving testimony from the relevant witnesses regarding Flores' 2008 conviction, the trial court instructed the jury that the evidence on this subject was presented for the limited purpose of deciding whether or not Flores had the specific intent to possess methamphetamine for sale on May 22, 2012.

On the evening of May 3, 2008, City of San Jose Police Officer Eric Bachmann and his partner, Officer Jina Tibaldi, were on patrol when he noticed a vehicle in front of him with a broken taillight. After the vehicle also failed to signal before making a left turn, Bachmann activated his lights and siren and pulled the vehicle over.

Officer Bachmann approached the vehicle, and saw there were three men inside. Flores was sitting in the back seat and Bachmann directed him to get out of the vehicle and sit on the curb near his patrol car. Bachmann noticed that Flores seemed very nervous, and was sweating and fidgety. His eyelids were fluttering, and his pupils were dilated and nonreactive to light. Bachmann believed Flores was under the influence of a controlled substance, specifically a stimulant like methamphetamine. Bachmann searched Flores and found a plastic baggie containing 19.6 grams, gross weight, of methamphetamine, in his left sock. Based on the large amount of the drug contained in the baggie, Bachmann believed that it was intended for sale. After he was arrested, Flores admitted he had used methamphetamine earlier that evening and that he used the drug about once a week.

Officer Bachmann did not find any paraphernalia for using methamphetamine in the car or on Flores' person. He also did not find any scales, packaging materials, cutting agents or pay/owe sheets.

5

Officer Tibaldi also observed Flores acting nervous, blinking rapidly and fidgeting as he sat on the curb prior to his arrest. After he was processed, she placed him in handcuffs for transportation to the jail, and Flores volunteered that he had not worked in four weeks and had no money. His car had broken down that afternoon and he could not afford to have it repaired. One of his friends sold drugs and another friend wanted drugs, so he delivered the drugs, "and that they had kicked him down to smoke some that day." Flores told Tibaldi his girlfriend was having his baby, "times were tight and . . . he needed to make ends meet."

The parties stipulated Flores was subsequently convicted of possession of methamphetamine with intent to sell in 2008.

### B. Defense case

Dr. Gantt Galloway testified as an expert on pharmacology of methamphetamine. He did not examine Flores or review any of the police reports in this case, though he has treated many methamphetamine users over the years. In his drug treatment program, those using methamphetamine report using about half a gram a day, "[w]ith a lot of variability, both up and down." Dr. Galloway could offer no opinion on whether Flores possessed methamphetamine for personal use or for sale or both.

### C. Verdict and sentencing

The jury found Flores guilty of possession of methamphetamine for sale (Health & Saf. Code, § 11378, count 1) and transportation of a controlled substance (*id*., § 11379, subd. (a), count 4).[5] In connection with count 4, the jury also found true the special allegation that Flores transported the methamphetamine for purposes of sale. In a

---

[5] Prior to trial, Flores pleaded no contest to the misdemeanor charges of resisting arrest (Pen. Code, § 148, subd. (a)(1), count 2) and providing false information to a police officer (*id*., § 148.9, count 3).

bifurcated proceeding, Flores admitted the special allegation that he had a prior conviction resulting in a prison term (Pen. Code, § 667.5, subd. (b)).

Flores was sentenced to a total term of seven years, consisting of the upper term of four years on count 4 with a consecutive three-year term based on his prior conviction for possession of a controlled substance (Health & Saf. Code, § 11370.2, subd. (c)). On the misdemeanor charges, he was sentenced to two six month sentences to be served concurrent with the term on count 4. The trial court also imposed, but stayed pursuant to Penal Code section 654, a three year term on count 1 and a one year term for his prior prison term conviction. Finally, Flores was awarded a total of 484 days of credits and ordered to pay various fines and fees, none of which have been challenged on appeal.

## II. DISCUSSION

### A. *Admission of statements regarding being a transient and being unemployed*

Flores' first claim of error is that the trial court should have sustained defense counsel's objection, under Evidence Code section 352, to Officer Fisher's testimony regarding Flores' statements to him about being a transient and being unemployed. Flores argues his status as an out of work transient is not relevant and the evidence was more prejudicial than probative. We disagree.

#### 1. *Standard of review*

The standard of review for Evidence Code section 352 challenges is abuse of discretion. "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) On appeal, " '[a] trial court's exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice. [Citation.] In other words, discretion is abused only if the court exceeds the bounds of reason, all of the

7

circumstances being considered.' " (*People v. Green* (1995) 34 Cal.App.4th 165, 182-183.)

Generally, the admission of evidence in violation of state law is reversible only upon a showing that it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) A due process clause violation, requiring review under the more stringent federal standard set forth in *Chapman v. California* (1967) 386 U.S. 18, occurs where the admission of the evidence "makes the trial *fundamentally unfair*." (*People v. Partida* (2005) 37 Cal.4th 428, 439.)

> 2. *The trial court did not abuse its discretion in admitting the evidence, and if it did, any error was harmless*

Flores was charged with possession of methamphetamine for sale, and his defense at trial was that the drug in question was for his personal use. Officer Fisher testified that methamphetamine users typically purchase the drug in small quantities, and that the most they will have in their possession at any given time is usually no more than one and a quarter grams. It was undisputed that Flores was in possession of 7.38 grams of methamphetamine with an estimated value of $400 to $700. Flores' lack of residence and employment status were probative of his intent to sell at least some of the methamphetamine since this, as Fisher testified, is a common way in which methamphetamine users finance their continued use of the drug.

However, even assuming the trial court should have sustained the objection, Flores cannot establish a due process violation, because the admission of the challenged evidence did not render his trial fundamentally unfair. Officer Fisher testified at length about why, based on his experience and training, he believed Flores possessed the drug in order to sell it. The only contrary evidence was provided by the defense expert, Dr. Galloway, who testified some methamphetamine users can use a lot more of the drug, perhaps even more than a gram per day, than other methamphetamine users. However,

Dr. Galloway did not interview Flores and could not render an opinion as to whether Flores was such a heavy user.

Applying the *Watson* standard, we conclude that any error in admitting the evidence that Flores was a transient and unemployed was harmless. It is not reasonably probable that Flores would have obtained a more favorable result had the challenged evidence been excluded. (*Watson*, *supra*, 46 Cal.2d at pp. 835-836.)

B.        *Admission of prior drug conviction under Evidence Code section 1101*

Flores next argues the trial court erred in permitting the prosecution to admit evidence of his 2008 conviction for possession of methamphetamine for sale, even though it was ostensibly admitted for the limited purpose of proving intent, because the 2008 offense was not substantially similar to the instant offense. Again, we disagree.

1.        *Standard of review*

Evidence Code section 1101, subdivision (a) prohibits admission of evidence, including specific instances of uncharged misconduct, to prove conduct of the person on a specific occasion. However, Evidence Code section 1101, subdivision (b), permits admission of evidence including uncharged misconduct when it is relevant to establish some fact other than the person's character, such as motive or intent. When determining whether uncharged misconduct is relevant to prove intent, "[t]he least degree of similarity (between the uncharged act and the charged offense) is required . . . . In order to be admissible . . . the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." ' " (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

Furthermore, uncharged misconduct is admissible only if it is relevant to issues other than a defendant's propensity to commit crimes and " 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352.' " (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 404.) Pursuant to Evidence Code section 352, a trial court has discretion to exclude evidence if the probative value is substantially

9

outweighed by the probability that its admission will: "(a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

We review a trial court's admission of a defendant's prior acts of misconduct for an abuse of discretion. (*People v. Kipp* (1998) 18 Cal.4th 349, 369.)

The uncharged misconduct at issue arose from Flores' prior arrest and conviction for possession of methamphetamine for sale in 2008. The prosecution moved in limine to admit this evidence for the limited purpose of showing Flores' intent to sell methamphetamine in the instant case. The trial court overruled Flores' objection and allowed the evidence to be introduced. Before the evidence was introduced and again at the close of evidence, the trial court expressly instructed the jury it should only consider the evidence for the limited purpose of deciding Flores' specific intent.

Though Flores argues the facts of the prior offense were not substantially similar to those of the instant offense, that is not the standard. Only the "least degree" of similarity is required when the evidence is offered to prove intent, and there were ample similarities between the two cases. (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 402.) In both cases, Flores was the passenger in a vehicle stopped by police and arrested after being found in the possession of a large quantity of methamphetamine. In neither case did police find any other indicia of sales activity, such as packaging materials, scales or pay/owe sheets, on Flores' person or in the vehicle in which he had been riding. However, in neither case did police find any paraphernalia associated with using methamphetamine, such as syringes, glass pipes, etc. These similarities were sufficient to warrant the introduction of this evidence for the limited purpose of establishing Flores' intent to sell methamphetamine and the trial court did not abuse its discretion in allowing it.

### C. Admission of 2008 statements regarding unemployment and having a pregnant girlfriend

Flores contends the trial court erred in allowing the officers who testified about his 2008 arrest to testify that he told them he was (at that the time of that arrest) unemployed and that his girlfriend was pregnant with his child. He asserts this evidence was inflammatory and prejudicial. Regardless of whether the evidence should have been admitted, Flores did not object to its introduction below and has thus forfeited the claim on appeal.

In his reply brief, Flores cites *People v. Whisenhunt* (2008) 44 Cal.4th 174 (*Whisenhunt*) in support of his assertion that he preserved the issue by way of his opposition to the People's in limine motion seeking the introduction of any evidence of the 2008 arrest and conviction. However, during the hearing on that motion, there was absolutely no discussion of the statements Flores may have made to Officer Tibaldi as she transported him to jail. Rather, the in limine argument revolved around whether or not the prior incident was sufficiently similar to permit its introduction under Evidence Code section 1101. As noted in *Whisenhunt*, however, there are three criteria for preserving an issue on appeal: "(1) a specific legal ground for exclusion was advanced through an in limine motion and subsequently raised on appeal; (2) the in limine motion was directed to a particular, identifiable body of evidence; and (3) the in limine motion was made at a time, either before or during trial, when the trial judge could determine the evidentiary question in its appropriate context." (*Whisenhunt*, *supra*, at p. 210.)

This was not the case here. Although Flores argued that the evidence of his 2008 arrest and conviction should not be admitted under Evidence Code section 1101, there was no discussion during the hearing about the statements Flores made to the arresting officers about his employment status or about his pregnant girlfriend. The only issues that were of concern to the trial court and the parties were the similarities (or, as Flores urged, the lack thereof) between the 2008 incident and the instant offense. The trial court

11

had no occasion to address the admissibility of Flores' statements to Officer Tibaldi, and thus it was incumbent on Flores to object to Tibaldi's testimony during trial.

However, even assuming the issue was not waived, the evidence was not more prejudicial than probative. In 2008, Flores was arrested with more than 19 grams of methamphetamine and convicted of possessing that drug with the intent to sell it. He explained to Officer Tibaldi he needed money, his girlfriend was pregnant and he was delivering the methamphetamine from his dealer friend to his user friend. As before, even assuming the evidence should have been excluded upon timely objection, any error in admitting it was harmless. It is not reasonably probable that Flores would have obtained a more favorable result had the challenged evidence been excluded. (*Watson*, *supra*, 46 Cal.2d at pp. 835-836.)

      *D.*     *Admission of evidence Flores was in a stolen car when arrested*, *he fled from police and gave them false names when taken into custody*

Finally, Flores argues the trial court erred by allowing the jury to hear testimony that he was in a stolen vehicle, resisted arrest and gave false information to the police. Before trial, he pleaded no contest to the misdemeanor charges of resisting arrest and providing false information to the police and thus the jury did not need to hear any of the evidence related to those offenses.

Prior to trial, defense counsel brought an in limine motion seeking to exclude any reference to the fact that Flores was a passenger in a stolen vehicle on the grounds that there was no evidence he was aware it was stolen nor was he charged with vehicle theft or assisting in vehicle theft. The trial court denied the motion, stating any references would be "relevant to explain the officer's actions; otherwise, the jury might conclude that they stop every fifth car that they see or is [*sic*] somehow exceeding their authority."

Again, we review challenges to the admissibility of evidence for an abuse of discretion. (*People v. Green*, *supra*, 34 Cal.App.4th at pp. 182-183.) The trial court denied Flores' in limine motion about the stolen vehicle, finding the evidence was

12

pertinent to explaining how Flores came into contact with police that day. While the testimony about officers following and stopping a suspected stolen vehicle in which Flores happened to be a passenger was perhaps somewhat prejudicial, there was no argument or testimony elicited to suggest that Flores knew the vehicle was stolen or that he participated in its theft. The trial court did not abuse its discretion in allowing the testimony.

However, even if this ruling was erroneous, it was not reasonably probable Flores would have obtained a more favorable result had the evidence been excluded. (*Watson*, *supra*, 46 Cal.2d at pp. 835-836.)

As to the claim that the trial court should have excluded Officer Fisher's and Sergeant Longone's testimony about Flores resisting arrest and giving two false names, we find the issue is waived. (Evid. Code, § 353, subd. (a).) Although this evidence was arguably made irrelevant by virtue of Flores pleading no contest to the associated misdemeanor charges before trial, defense counsel did not make an in limine motion to preclude the evidence nor was there any objection to the evidence at trial.

To forestall any subsequent claim that defense counsel was ineffective, we find that the evidence was not so inflammatory or prejudicial that there is a reasonable probability that Flores would have obtained a more favorable result had it been excluded. (*Watson*, *supra*, 46 Cal.2d at pp. 835-836.) Flores was in possession of a baggie containing 7.38 grams of methamphetamine at the time of his arrest, and his defense consisted solely of an argument that the drug was for personal use, rather than for sales. Flores had previously been convicted of possession of methamphetamine for sale in 2008. Though officers found no indicia of sales, such as packaging materials, scales or pay/owe sheets, they also found no paraphernalia for using the methamphetamine. Officer Fisher testified the amount was far in excess of what a user would possess unless he intended to sell the bulk of it to finance his continued usage. The evidence against him was substantial, and the testimony about his efforts to resist or avoid arrest by

13

struggling and giving false names, was not so inflammatory as to bias the jury against him.

> *E.*     *Cumulative error*

Because we have found no basis for any of Flores' claims of error, his claim of cumulative error fails.  (See *People v. Seaton* (2001) 26 Cal.4th 598, 639; *People v. Bolin* (1998) 18 Cal.4th 297, 335.)

**III.     DISPOSITION**

The judgment is affirmed.

_____
                                                            Premo, J.

WE CONCUR:

_____
         Rushing, P.J.

_____
         Elia, J.

14